**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**KIMBERLY FRANTZ,**

                    **Plaintiff,**

vs.                                         **5:15-CV-1192
                                                   (MAD/ATB)**

**CITY OF OSWEGO, BRYAN THOMPSON, City
of Oswego Police Officer individually and in his
official capacity, OFFICER QUINONES, City of
Oswego Police Officer, individually and in his
official capacity,**

                    **Defendants.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**HOFFMANN, HUBERT LAW FIRM**         **TERRANCE J. HOFFMAN, ESQ.**
4629 Onondaga Boulevard
Syracuse, New York 13219
Attorneys for Plaintiff

**GOLDBERG, SEGALLA LAW FIRM**         **PATRICK B. NAYLON, ESQ.**
2 State Street - Suite 1200
Rochester, New York 14614
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 19, 2015, Plaintiff Kimberly Frantz commenced this action in New York State Supreme Court, Oswego County, against Defendants Bryan Thompson, Zackary Quinones, and the City of Oswego, alleging both state and federal claims. *See* Dkt. No. 1-1. On October 5, 2015, Defendants removed this action to the Northern District of New York pursuant to 28 U.S.C. § 1441, asserting federal jurisdiction under 28 U.S.C. § 1331. *See* Dkt. No. 1 at ¶¶ 1, 4. Presently

before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 20. For the following reasons, the motion is granted in part and denied in part.

## II. BACKGROUND[1]

On November 22, 2014, Plaintiff and her husband, Dennis Frantz, threw a small party to celebrate his birthday. *See* Dkt. No. 20-11 at 28:6-28:9. They bought beer and invited three of Plaintiff's coworkers to their house for a night of poker. *See* Dkt. No. 21-1 at ¶ 3. Two of the guests were working late shifts that night, so the party did not begin until after midnight. *See* Dkt. No. 20-11 at 28:18-28:25. After several hours of drinking and playing cards, Plaintiff and Mr. Frantz got into an argument during which Plaintiff punched Mr. Frantz in the face, opening up a cut on his eyebrow. *See* Dkt. No. 20-3 at ¶¶ 1-2.[2] At approximately 5:32 AM, Plaintiff requested that the Oswego Police Department respond to a domestic dispute at her home. *See id.* Three police officers responded to the call: officer John Proano arrived first, and he was followed by Defendants Quinones and Thompson. *See* Dkt. No. 21-1 at ¶ 5. When the police officers arrived, Mr. Frantz was drunk and threatening to harm himself with a razor blade. *See* Dkt. No. 20-3 at ¶ 3. Mr. Frantz was removed from the scene without incident and detained pursuant to the mental hygiene law. *See id.* at ¶ 4.

---

[1] Unless otherwise indicated, these facts are undisputed or are taken in the light most favorable to Plaintiff.

[2] Local Rule 7.1(a)(3) provides that the Court shall deem as admitted those facts in the statement of material facts that are "properly supported" and that the opposing party does not specifically controvert. *See id.* As such, courts in this district have held that when the non-moving party fails to file a responsive statement of material facts, the facts in the moving party's statement of material facts should be deemed admitted "to the extent they are supported by evidence in the record." *Riehl v. Martin*, No. 13-CV-439, 2014 WL 1289601, *5 (N.D.N.Y. Mar. 31, 2014). Here, Plaintiff responded to several paragraphs of Defendants' statement of material facts, but did not respond to many others. The Court deems the uncontroverted paragraphs admitted to the extent that they are supported by evidence in the record.

When she saw her husband in handcuffs, Plaintiff, who was slightly drunk, became angry. *See* Dkt. No. 20-11 at 37:13-37:16, 46:12-46:14. She wanted the officers only to take her husband for a walk and calm him down; she did not want him arrested. *See id.* at 41:6-41:12. Plaintiff testified at her deposition that at that point she "lost it" and "was kind of flipping out a little bit." *See id.* at 37:13-37:16. Plaintiff also claims that Defendant Thompson kept "telling [her] to shut [her] mouth and being extremely rude to [her]." *See id.* at 42:11-42:19. Plaintiff asked the police officers to leave her house. *See* Dkt. No. 21-11 at 1.[3] Eventually, everyone but Plaintiff left the house; Mr. Frantz was in the back of a police car, the three guests were on the sidewalk giving statements, and all three police officers were also outside of the house. *See* Dkt. No. 20-11 at 51:17-52:25.

Plaintiff's house had a fully-enclosed front porch, and Plaintiff stuck her head out of the porch door to ask the police where they were taking her husband and why he was in handcuffs. *See id.* According to one of Plaintiff's guests who was on the sidewalk, Plaintiff "was not screaming but was talking in a voice that I consider somewhat louder than normal, because [Mr. Frantz] and the police officers were about 20 feet away when she called out." Dkt. No. 21-2 at ¶ 14. None of the officers answered Plaintiff's questions, but Defendant Thompson advised Plaintiff to be quiet or she would be placed under arrest. *See id.* at ¶ 15. Plaintiff, however, continued asking questions of the police officers. *See id.* Without any explanation, Defendant Thompson charged toward Plaintiff, grabbed her right arm, and placed it in an "arm bar." *See* Dkt. No. 21-11 at 2.[4] Defendant Quinones rushed to assist Defendant Thompson, and he placed

---

[3] The cited page numbers refer to those generated by the Court's electronic filing system ("ECF").

[4] According to Defendant Thompson, putting Plaintiff in an "arm bar" means that he stood behind Plaintiff and used both of his arms to twist her arm behind her back. *See* Dkt. No. 20-12

3

Plaintiff's left arm in an arm bar. *See* Dkt. No. 20-13 at 42:5-42:13. Before Plaintiff had time to react, Defendant Quinones performed a leg sweep by kicking out one of Plaintiff's feet and both officers forced her to the ground. *See* Dkt. No. 21-1 at ¶¶ 9-11. Because both of Plaintiff's arms were being held behind her back, she landed face-first on the floor. *See* Dkt. No. 20-11 at 86:3-86:5. Plaintiff's most serious injury was a broken foot, which has required multiple surgeries and continues to cause her significant problems. *See* Dkt. No. 21-11 at 3-4. According to Plaintiff, "[i]t was only at that point that [she] began to yell and scream." Dkt. No. 21-1 at ¶ 9.

Defendants' version of events is quite different. According to Defendants Thompson and Quinones, Plaintiff followed the officers out of the house and walked the approximately twenty feet from the porch to the sidewalk. *See* Dkt. No. 20-12 at 18:8-18:11; Dkt. No. 20-13 at 22:15-22:24. Plaintiff was loudly shouting obscenities at the police officers, and Defendant Thompson repeatedly demanded that she cease causing a disturbance. *See* Dkt. No. 20-12 at 19:22-20:22. Eventually, Defendant Thompson informed Plaintiff that she was under arrest for violating the city noise ordinance. *See id.* at 20:12-20:16. Plaintiff then turned and ran back toward the house, and Defendant Thompson chased her and caught up to her at the entryway to the porch. *See id.* at 22:18-23:9. Defendant Thompson grabbed Plaintiff's right arm, repeated that she was under arrest, and asked her to stop resisting. *See id.* at 28:11-28:16. Defendant Quinones came to Defendant Thompson's aid and put Plaintiff's left arm in an arm bar, while Defendant Thompson did the same with her right arm. *See id.* at 29:20-29:22. Plaintiff continued to resist arrest by twisting and pulling away from the officers, so Defendant Quinones used a leg sweep to bring Plaintiff to the ground. *See id.* at 31:12-31:13; Dkt. No. 20-13 at 44:12-44:14.

---

at 30:4-30:18.

Plaintiff was charged with violating a noise ordinance and resisting arrest. *See* Dkt. No. 20-19 at 1. In an April 30, 2015 Decision and Order, the Oswego City Court dismissed the accusatory instrument as facially insufficient because it did not contain enough factual information to support the charges. *See id.* at 9. Plaintiff filed a pro se Notice of Claim dated February 13, 2015, with the City of Oswego alleging numerous violations of state and federal law. *See* Dkt. No. 20-4. Defendants subsequently served a Notice of Hearing on Plaintiff by U.S. Mail, and Plaintiff failed to appear at the hearing. *See* Dkt. No. 20-6 at 5, 13. On August 19, 2015, Plaintiff commenced this action in New York State Supreme Court, Oswego County, and Defendants subsequently removed to the Northern District of New York. *See* Dkt. No. 1. Plaintiff asserts a number of state and federal claims, including false arrest, excessive force, and a claim that the Oswego City noise ordinance violates the First Amendment. *See id.* at 1-6. Defendants filed a motion for summary judgment, which Plaintiff opposed. *See* Dkt. Nos. 20, 21. Defendants did not submit a reply.

### III. DISCUSSION

**A.      Standard of Review**

*1. Summary Judgment*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37. Moreover, it is well settled that a party opposing a motion for summary judgment may not

simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[S]ummary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment. Summary judgment may also be granted against any part of the remedy sought by the opposing party's claims. *See Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010).

### *2. Qualified Immunity*

Qualified immunity is an affirmative defense and, as such, Defendants bear the burden of proving that the privilege of qualified immunity applies. *See Coolick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 50, 60-61 (2d Cir. 2009)). The Court is mindful that qualified immunity is "'an entitlement not to stand trial or face the other burdens of litigation,'" and that this privilege is "'effectively lost if a case is erroneously permitted to go to trial.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Courts engage in a two-part inquiry to determine whether the doctrine of qualified immunity bars a suit against government officials. *See Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). First, a court must consider whether the facts, construed in favor of the party asserting the injury, "demonstrate a violation of a constitutional right." *See id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, a court must also determine "whether the officials' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Courts may exercise their discretion in deciding which prong should be considered first. *See Pearson v. Callahan*, 555 U.S. 223, 243 (2009).

"A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). A plaintiff can successfully defeat the defense of qualified immunity on summary judgment by raising a genuine issue of material fact. *See Jones v. Parmley*, 465 F.3d 46, 63 (2006); *Usavage v. Port Auth.*, 932 F. Supp. 2d 575, 593 (S.D.N.Y. 2013) (citing *Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2013)).

7

A right is clearly established if its "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). An official's actions are not protected by qualified immunity by virtue of the fact that the action in question has not previously been held unlawful. *See id.; Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) ("An officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury"). "[I]f decisions from this or other circuits clearly foreshadow a particular ruling on the issue," the Court may treat the law as clearly established. *See Terebesi*, 764 F.3d at 231 (internal quotation marks omitted) (stating that the courts "consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law" in determining whether the law is clearly established) (quoting *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir. 1997)).

**B.     State Law Claims**

Defendants' motion for summary judgment does not address the merits of Plaintiff's state law claims. Instead, Defendants argue that all state law claims must be dismissed because Plaintiff failed to comply with section 50-h of the General Municipal Law. *See* Dkt. No. 20-2 at 6. "As a condition precedent to bringing a state law tort claim against a municipality a plaintiff must file a Notice of Claim within ninety days after her claim accrues." *Przybyla v. County of Suffolk*, No. 09-CV-5129, 2017 WL 1274051, *2 (E.D.N.Y. Mar. 3, 2017) (citing N.Y. Gen. Mun. L. § 50-e). After receiving a Notice of Claim, the municipality may demand a hearing "to examine 'the claimant relative to the occurrence and extent of the injuries or damages for which claim is made.'" *See id.* (quoting N.Y. Gen. Mun. L. § 50-h(1)). If the claimant is proceeding pro se, then the demand for examination must "be served personally or by registered or certified mail

8

upon the claimant." N.Y. Gen. Mun. L. § 50-h(2). If a properly served claimant fails to appear at the hearing or request an adjournment, then she cannot proceed with state law claims against the municipality. *See Przybyla*, 2017 WL 1274051, at *2.

Defendants argue that Plaintiff's state law claims must be dismissed because she failed to appear at her hearing or request an adjournment. *See* Dkt. No. 20-2 at 6. But Plaintiff claims that she was never properly served. *See* Dkt. No. 21-10 at 12. Plaintiff filed a pro se Notice of Claim dated February 13, 2015, *see* Dkt. No. 20-4, and Defendant City of Oswego responded by serving Plaintiff with a Notice of Hearing, *see* Dkt. No. 20-5. However, Defendants' affidavit of service gives no indication that Plaintiff was served personally or by registered or certified mail, as required by section 50-h(2) of the General Municipal Law. *See* Dkt. No. 20-6 at 13. "[S]ince the demand was not timely served in accordance with the statute it was not effective against [Plaintiff] 'for any purpose.'" *Bythewood v. Hempstead Pub. Sch.*, 46 A.D.3d 731, 732-33 (2d Dep't 2007) (quoting N.Y. Gen. Mun. L. § 50-h(2)). Therefore, Plaintiff's failure to appear at her hearing does not prevent her from proceeding with state law claims in this action. *See Flowers v. Falk*, 195 A.D.2d 294, 294-95 (1st Dep't 1993) (finding that service of a notice of hearing by regular mail on a pro se claimant was not valid, and therefore the claimant's complaint in state court could not be dismissed for failure to attend the hearing).

**C.**    **Constitutionality of the Noise Ordinance**

In the complaint, Plaintiff seeks a declaratory judgment that the City of Oswego's noise ordinance is unconstitutional. *See* Dkt. No. 1 at ¶ 28. In particular, Plaintiff claims that the noise ordinance is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment. *See id.*; *see also Vt. Right to Life Committee, Inc. v. Sorrell*, 875 F. Supp. 2d 376, 386 (D. Vt. 2012) ("A law is vague, violating the Due Process Clause, when it 'fails to provide a

9

person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory conduct'") (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).  In the motion for summary judgement, Defendants ask the Court to dismiss Plaintiff's void-for-vagueness claim, arguing that Plaintiff lacks standing to challenge the constitutionality of the noise ordinance.  *See* Dkt. No. 20-2 at 14-17.  Plaintiff does address that argument in her opposition.  In fact, Plaintiff's memorandum of law in opposition to the motion for summary judgment does not even mention her First Amendment challenge to the City of Oswego's noise ordinance.

"A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" *Martinez v. City of New York*, No. 11-CV-7461, 2012 WL 6062551, *1 (S.D.N.Y. Dec. 6, 2012) (quoting *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)).  When a defendant files a summary judgment motion, "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims." *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014).  Since Plaintiff's opposition did not mention her void-for-vagueness claim, the Court deems that claim abandoned.

**D.  False Arrest**

A warrantless arrest is "presumptively unlawful."  *See Raysor v. Port Auth.*, 768 F.2d 34, 40 (2d Cir. 1985) (stating that "the plaintiff need not prove either malice or want of probable cause"); *accord Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007).  However, "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).  Accordingly, the presumption that a warrantless arrest is unlawful

can be rebutted by the defendant if it is established that there was probable cause for the arrest. *See Jenkins*, 478 F.3d at 88. The existence of probable cause is a complete defense, for which the defendant bears the burden of proof. *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Bernard*, 25 F.3d at 102). Furthermore, qualified immunity shields police officers from liability if the officer can establish that there was arguable probable cause to arrest, even if there was no "actual" probable cause. *Zalaski v. City of Hatford*, 723 F.3d 382, 390 (2d Cir. 2013). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

Plaintiff was arrested for violating section 165-3 of the Oswego City noise ordinance, which states: "It shall be unlawful for any person to make, continue, or cause to be made or continued any loud or unreasonable noise, as defined herein, or any noise which either annoys, disturbs injures or endangers the comfort, repose, health, peace or safety of others within the limits of the City." *See* Dkt. No. 20-16 at 9; Dkt. No. 21-5 at 5. The ordinance determines the reasonableness of a given noise by looking to, among other factors, the volume, intensity, and nature of the noise. *See* Dkt. No. 21-5 at 5. Defendants claim that there was arguable probable cause to arrest Plaintiff because she was "admittedly screaming obscenities in the street at 5:30 in the morning" and was therefore violating the noise ordinance. Dkt. No. 20-2 at 10. But Plaintiff does not admit that she was screaming obscenities in the street. Instead, there are two competing versions of what happened that night, particularly after the police officers exited Plaintiff's house. And there are no complaints from neighbors or audio recordings on the record to support either side's version.

11

On one hand, Defendants Thompson and Quinones testified at their depositions that Plaintiff was highly intoxicated and followed them to the sidewalk screaming obscenities. *See* Dkt. No. 20-13 at 22:8-23:25; Dkt. No. 20-12 at 18:8-19:23. Plaintiff and one of her guests, Kristopher Jordan, dispute that account. They state that she leaned out of the porch door but never actually exited the porch, and she asked the police officers why her husband was being arrested. *See* Dkt. No. 21-2 at ¶ 14; Dkt. No. 21-1 at ¶ 7. According to Jordan, Plaintiff "was not screaming but was talking in a voice that I consider somewhat louder than normal, because Dennis and the police officers were about 20 feet away," and she did not use any profanity. Dkt. No. 21-2 at ¶ 14. Similarly, Plaintiff acknowledges that she "called out" questions to the officers from her front porch, but she states that she began screaming only after her ankle was broken. *See* Dkt. No. 21-1 at ¶¶ 7, 9. Although Plaintiff does admit that she "lost it" and was "freaking out a little bit" while inside of the house, she does not admit to screaming obscenities while on the porch. *See* Dkt. No. 20-11 at 42:11-42-19. She also claims that she was not very intoxicated. *See id.* at 46:12-46-14.

The volume, nature, and intensity of the noise are disputed material facts. Drawing all inferences in Plaintiff's favor as the Court must at this stage, *see Chambers*, 43 F.3d at 36, the Court cannot find as a matter of law that there was probable cause to arrest Plaintiff for a noise ordinance violation. Similarly, the Court cannot find that Defendants Quinones and Thompson are entitled to qualified immunity because the volume, nature, and intensity of the noise are disputed material facts, and qualified immunity must be based on undisputed material facts. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007); *see also Holt v. Metro. Transit Auth.*, No. 15-CV-3114, 2015 WL 12791161, *2 (E.D.N.Y. Dec. 19, 2015) (denying qualified immunity because the court could not "quantify sound volume on [the] record as a matter of law" and

therefore could not find arguable probable cause that the plaintiff had violated the applicable noise ordinance). Therefore, Defendants' motion for summary judgment is denied as to Plaintiff's false arrest claim.

**E.     Excessive Force**

Where an excessive force claim arises in the context of an arrest, it is the protections of the Fourth Amendment that are invoked. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Accordingly, the Court must apply the reasonableness test of the Fourth Amendment, which asks "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quoting *Scott v. United States*, 436 U.S. 128, 137-39 (1978)). The Court does not evaluate the record in hindsight but, instead, from the "perspective of a reasonable officer on the scene." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (internal citations and quotation marks omitted).

Again, Plaintiff and Defendants have different accounts of Plaintiff's arrest. According to Defendants Quinones and Thompson, Plaintiff ran from Defendant Thompson after he attempted to place her under arrest. *See* Dkt. No. 20-12 at 22:20-22:24; Dkt. No. 20-13 at 35:8-35:12. When Defendants Thompson and Quinones caught up to her at the entrance to her porch, she resisted arrest. *See* Dkt. No. 20-12 at 24:18-26:11; Dkt. No. 20-13 at 37:4-39:14. Because Plaintiff was twisting and pulling away, Defendant Quinones used a leg sweep in an attempt to gain control over her. *See* Dkt. No. 20-13 at 43:2-44:14. Plaintiff, on the other hand, states that she never left her porch, that she was not told that she was under arrest or to stop resisting, and that she "did not resist arrest in any way." Dkt. No. 21-1 at ¶¶ 9-10. Nonetheless, she was

13

brought to the ground face first by a leg sweep takedown, and her foot was badly broken in the process.

In applying the Fourth Amendment reasonableness test to excessive force claims, courts review the totality of circumstances in each particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempted to evade arrest by flight." *See Graham*, 490 U.S. at 396; *see also Tracy*, 623 F.3d at 95-96; *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). Here, the offense for which Plaintiff was arrested—a noise ordinance violation—was undoubtedly minor, and it is undisputed that Plaintiff did not pose a threat to the safety of the arresting officers or anyone else. Additionally, accepting Plaintiff's version of the facts as true, she did not resist or attempt to evade arrest by flight. Finally, the force used was significant enough to cause serious injuries to Plaintiff. And while "the severity of [a] plaintiff's alleged injuries is not dispositive, it is nonetheless highly relevant to the inquiry about whether the force applied was reasonable." *See Marlin v. City of New York*, No. 15-CV-2235, 2016 WL 4939371, *11 (S.D.N.Y. Sept. 7, 2016) (citations and quotation marks omitted). Reviewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that the use of force was not objectively reasonable and thus constituted a violation of Plaintiff's Fourth Amendment rights. In their motion, Defendants make two arguments as to why Plaintiff's excessive force claim should nonetheless be dismissed as to one or both of the individual Defendants.

First, Defendants argue that the excessive force claim should be dismissed as to Defendant Thompson because he did not administer the leg sweep. *See* Dkt. No. 20-2 at 11. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d

496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had an opportunity to do so." *Gonzalez v. Waterbury Police Dep't*, 199 F. Supp. 3d 616, 621-22 (D. Conn. 2016) (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)). To survive a motion for summary judgment, "a plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene, [but] he must nonetheless proffer some competent evidence that the named officers at least engaged in one type of conduct or the other." *Smith v. P.O. Canine Dog Chas*, No. 02-CV-6240, 2004 WL 2202564, *8 (S.D.N.Y. Sept. 28, 2004) (citing *Jeffreys*, 275 F. Supp. 2d at 474).

Here, it is undisputed that both Defendant Quinones and Defendant Thompson were present at the time of Plaintiff's arrest and during the alleged excessive use of force. Moreover, Plaintiff alleges that Defendant Thompson was directly involved in the excessive use of force. Although Plaintiff's back was to the officers when she was thrown to the ground, she testified at her deposition that she believed both Defendants Thompson and Quinones threw her to the ground. *See* Dkt. No. 20-11 at 57:9-57:21; *see also Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 297-98 (S.D.N.Y. 2009) (finding that even though the plaintiff "could not identify who threw her to the floor and held her there with his boot . . . all of the individual defendants were present" and therefore it is possible that all of them saw what happened and failed to intervene on her behalf). Therefore, there is sufficient evidence in the record to create a genuine issue of material fact as to whether Defendant Thompson was personally involved in the alleged excessive use of force.

Second, Defendants argue that even if the use of force violated Plaintiff's Fourth Amendment rights, Defendants Quinones and Thompson should still be entitled to qualified immunity. "It is well established that qualified immunity may operate as a defense to excessive force claims." *Betts v. Rodriquez*, No. 15-CV-3836, 2017 WL 2124443, \*4 (S.D.N.Y. May 15, 2017). "Even if the force is objectively unreasonable, an officer may still be eligible for qualified immunity if it was objectively reasonable for the officer to *believe* that her action did not violate clearly established law." *Keene v. Schneider*, 350 F. Appx. 595, 596 (2d Cir. 2009). "The Supreme Court has made clear that officers who have used excessive force may be entitled—under the qualified immunity doctrine—to an extra layer of protection 'from the sometimes hazy border between excessive and acceptable force.'" *De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, \*17 (S.D.N.Y. Sept. 24, 2012) (quoting *Saucier*, 533 U.S. at 206).

Multiple circuit courts have dealt with the relationship between leg sweeps, excessive force, and qualified immunity. In *Shafer v. County of Santa Barbara*, No. 15-56548, 2017 WL 3707904 (9th Cir. Aug. 29, 2017), the plaintiff sued a police officer for excessive force and false arrest. A jury found that the officer had probable cause to arrest the plaintiff for "resisting, delaying or obstructing" an officer, but the jury also found that the officer used excessive force in taking down the plaintiff with a leg sweep maneuver. *See id.* at 2. The Ninth Circuit held that there was sufficient evidence to support the jury's excessive force verdict but that the officer was nonetheless entitled to qualified immunity because using a leg sweep against a resisting arrestee does not violate clearly established law:

> [T]he question at hand is whether an officer violates clearly
> established law when he progressively increases his use of force
> from verbal commands, to an arm grab, and then a leg sweep
> maneuver, when a misdemeanant refuses to comply with the

16

> officer's orders and resists, obstructs, or delays the officer in his lawful performance of duties such that the officer has probable cause to arrest him in a challenging environment. The answer is no.

*Id.* at 5. There is, however, an important difference between *Schafer* and this case: when reviewing the facts in the light most favorable to Plaintiff, she was not resisting arrest.

Courts have overwhelmingly held that police officers are not entitled to qualified immunity when they use leg sweep maneuvers to take down arestees who are not resisting. *See McCaig v. Raber*, 515 F. Appx. 551, 555 (6th Cir. 2013) (rejecting a qualified immunity defense where the police officer used a leg sweep to take down an arrestee who "jerked away" when the police officer screamed in his ear but did not otherwise resist arrest); *Montoya v. City of Flandreau*, 669 F.3d 867, 873 (8th Cir. 2012) ("[T]he contours of the right at issue were sufficiently clear to inform a reasonable officer in [the defendant's] position it was unlawful for him to perform a 'leg sweep' and throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee"); *accord Johnson v. City of Fayetteville*, 91 F. Supp. 3d 775, 804 (E.D.N.C. 2015). Making all inferences in Plaintiffs favor, at the time that she was arrested for a noise ordinance violation, she was a not a threat to anyone, was not resisting arrest, and was not attempting to flee. Therefore, Defendants Quinones and Thompson are not entitled to qualified immunity as to Plaintiff's excessive force claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary in judgment (Dkt. No. 20) is **GRANTED in part** as to Plaintiff's claim that the Oswego City noise ordinance is unconstitutionally vague, and **DENIED in part** as to all of Plaintiff's other claims; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 19, 2017
       Albany, New York

Mae A. D'Agostino
U.S. District Judge